1
2
3
4
5
6
7                         UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9

10

11   CHANDANI DEZURE,                        Case No. 20-cv-09123-NC

                     Plaintiff,              **ORDER GRANTING**
12                                           **DEFENDANT'S MOTION TO**
                                             **DISMISS THE SECOND**
13         v.                                **AMENDED COMPLAINT**

14   THE AMERICAN BOARD OF                   Re: ECF 38
     PEDIATRICS, INC.,
15
                     Defendant.
16

17         Plaintiff Dr. Chandani DeZure alleges that Defendant the American Board of

18   Pediatrics discriminated against her when it refused to allow her to sit for a board

19   certification examination because she failed to meet ABP's hours prerequisite.  DeZure

20   claims that she was unable to meet the hours requirement because she was pregnant during

21   the relevant period.  The Court dismissed the first amended complaint (FAC) with leave to

22   amend, finding that ABP is not subject to the Fair Employment and Housing Act and

23   DeZure did not sufficiently allege retaliation under California's Unruh Civil Rights Act.

24   DeZure filed a second amended complaint (SAC), and ABP again moved to dismiss.  ECF

25   37; ECF 38.  The Court must now determine whether DeZure has sufficiently alleged her

26   claims for disparate impact and disparate treatment under the Americans with Disabilities

27   Act and the Unruh Act.  After reviewing the briefing, the Court grants ABP's motion.

28   //

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## I.      BACKGROUND

The Court previously summarized the relevant allegations in this case.  *See* ECF 36. Following the Court's order dismissing the FAC, DeZure filed a SAC against ABP alleging new claims of disparate impact and retaliation in violation of the ADA and the Unruh Act and disparate treatment in violation of the Unruh Act.  ECF 37.  On June 25, 2021, ABP brought this second motion to dismiss.  ECF 38.  In her opposition, DeZure dropped her ADA and Unruh Act retaliation claims.  ECF 44 at 20.  Thus, on this motion to dismiss, the Court only considers the remaining ADA and Unruh Act disparate impact and disparate treatment claims.  The Court also ordered the parties to provide supplemental briefing answering on the issue of whether pregnancy qualifies as a disability under the Unruh Act.  ECF 49.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  ECF 9; ECF 10.

## II.      LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

2

III.    **DISCUSSION**

A.    **ADA Disparate Impact**

1.    **Individual Discrimination Claim**

DeZure first alleges that ABP discriminated against her under federal law by adopting criteria to sit for the board certification examination that had a disparate impact on people with disabilities.  ECF 37 at ¶¶ 76-82.  Title III of the ADA provides that people shall not be "discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).  To establish a prima facie case of Title III discrimination, a plaintiff must show that: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The Court finds that the SAC fails to state a claim under the ADA because DeZure does not establish that she is disabled.  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."  42 U.S.C. § 12102.  The SAC states that DeZure was "temporarily disabled within the meaning of the ADA due to her pregnancy."  ECF 37 at ¶ 47.  Although, "disability" should be broadly construed, it is well-established that pregnancy is not a disability.  *See e.g. Latowski v. Northwoods Nursing Ctr.*, 549 Fed. App'x 478, 487 (6th Cir. 2013); *Rhett v. Carnegie Ctr. Assocs.*, 129 F.3d 290, 304 (3d Cir. 1997) (finding that Congress did not intend for pregnancy to be a temporary disability under the ADA); *Navarro v. Pfizer Corp.*, 261 F.3d 90, 97 (1st Cir. 2001) ("while pregnancy itself may not be an impairment, the decided ADA cases tend to classify complications resulting from pregnancy as impairments"); *Jeudy v. AG, DOJ*, 482 Fed. App'x 517, 520 (11th Cir. 2012) ("while pregnancy is generally not considered a disability, a pregnancy-related impairment may be considered a disability, if it substantially limits a major life activity").  Aside from

United States District Court
Northern District of California

3

1    the reliance on the pregnancy itself to establish a disability, the SAC does not identify any

2    pregnancy-related impairments as an alternative theory of disability.  Thus, because

3    DeZure fails to allege a disability, the SAC fails to state a claim under the ADA.

4              **2.    Associational Discrimination Claim**

5              DeZure also alleges discrimination through her association with her disabled son.

6    ECF 37 at ¶¶ 76-82.  The ADA prohibits "excluding or otherwise denying equal jobs or

7    benefits to a qualified individual because of the known disability of an individual with

8    whom the qualified individual is known to have a relationship or association."  42 U.S.C.

9    § 12112(b)(4).  The SAC fails to establish that ABP had "known" of DeZure's son's

10   disability at the time of the alleged discrimination.  DeZure asserts that she need not make

11   a showing of knowledge.  *See* ECF 44 at 12.  The Court finds that this argument directly

12   contradicts the language of the statute.  Thus, because DeZure has not alleged ABP's

13   knowledge of her son's disability, she fails to state a claim of associational discrimination.

14             In sum, the Court grants ABP's motion to dismiss the ADA disparate impact claim

15   because DeZure fails to allege that she was disabled under the ADA or that ABP knew of

16   her son's disability.  The Court grants DeZure leave to amend to fix these deficiencies.

17         **B.    Unruh Act Disparate Impact & Treatment**

18             For her second and third claims, DeZure alleges that ABP discriminated against her

19   under state law by adopting criteria that had a disparate impact on people with disabilities

20   and treated her differently than others because of her disability.  ECF 37 at ¶¶ 83-96.  The

21   Unruh Act provides that "all persons within the jurisdiction of this state are free and equal,

22   and no matter what their sex, race, color, religion, ancestry, national origin, disability,

23   medical condition, genetic information, marital status, sexual orientation, citizen, primary

24   language, or immigration status are entitled to the full and equal accommodations,

25   advantages, facilities, privileges, or services in all business establishments of every kind

26   whatsoever."  Cal. Civ. Code § 51(b).  When interpreting the Unruh Act, "business

27   establishments" should be defined "in the broadest sense reasonably possible."  *Burks v.*

28   *Poppy Construction Co.*, 57 Cal. 2d 463, 468 (1962).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 1.    ABP as a Business Establishment

ABP first argues that none of DeZure's Unruh Act claims can survive because ABP is not a business establishment as it has a limited membership, no public engagement, and no physical facilities open to the public.  The Court disagrees.

First, the Court finds that the SAC sufficiently alleges that although the ABP only offers board certification to pediatricians who choose to take its certification exam, "exclusivity in the choice of one's associates" is not the ABP's purpose.  ECF 37 at ¶ 13; *see Curran v. Mount Diablo Council of the Boy Scouts*, 147 Cal. App. 3d 712, 731 (1983).  The purpose of the ABP is to "guide[]" children and families as they navigate pediatric care, to "engage in open dialog" between pediatricians and the public, and to collaborate with other organizations to "align accreditation and certification."  *Id.* at ¶ 12.  The focus of the ABP is not to provide a private avenue for its members to associate, as demonstrated by the fact that it does not host social gatherings.  *Id.* at ¶ 29.  Thus, although ABP membership is limited, its purpose is public.

Second, the SAC sufficiently alleges that the ABP performs customary business functions.  Although ABP certification is voluntary, it is a "de facto requirement" and "has resulted in 87% of practicing physicians becoming board-certified."  *Id.* at ¶ 18.  This unspoken rule allows ABP to "economically thrive," bringing in over $33 million in program service revenue in 2019.  *Id.* at ¶ 19, 31.  And ABP uses most of this revenue for its own operations and business functions.  *See id.* at ¶ 31.  Like any other business that sells a product, once a physician gets certified, they do not pay dues or membership fees to the ABP.  *Id.* at ¶ 29.  And board-certified physicians do not participate in the operations or governance of the ABP by virtue of their "membership."  *Id.* at ¶ 30.  By collecting fees and using its revenue to run the organization without input from its members, the ABP functions much like a business.

Finally, although the ABP does not have a physical space that it opens to the public, the SAC alleges that it does provide valuable, non-physical resources to the public.  The ABP has property, however, the property is not open to its physicians without permission,

nor to the public. *Id.* at ¶ 29. Rather, the resource that the ABP shares with the public is its "third-party validation of [a] board-certified physician's competency." *Id.* at ¶ 14. This public resource is an important self-regulation in the absence of government or private oversight. *See id.* at ¶¶ 14-15. Thus, although the ABP does not open a physical resource to the public, its provision of other resources qualifies it as a business establishment.

Accordingly, because it serves a public purpose, conducts business functions, and provides a public resource, ABP is a business establishment under the Unruh Act.

### 2.    ADA-Based Unruh Act Claims

ABP then argues that DeZure fails to allege intentional discrimination as required for a non-ADA claim under the Unruh Act. ECF 38 at 20. Contrary to ABP's argument, the SAC appears to derive DeZure's Unruh Act claims from the alleged ADA violation. *See* ECF 37 at ¶¶ 83, 85, 90, 92. If DeZure is alleging discrimination under the Unruh Act based on the ADA, she does not need to make a showing of intentional discrimination. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009). However, if based on the ADA, the Unruh Act claims would be deficient for the same reasons the ADA claim is deficient– the SAC fails to show that DeZure is disabled under the ADA.

### 3.    Non-ADA Unruh Act Claims

If, instead, DeZure's Unruh Act Claims are not based on the ADA, DeZure must allege intentional discrimination to sufficiently state a claim. *See* ECF 36 (citing *Mei Ling v. City of L.A.*, No. 2:11-cv-07774-SVW-E, 2012 U.S. Dist. LEXIS 199358, at *27 (C.D. Cal. Apr. 10, 2012)). Aside from the legal conclusion that ABP acted "with the wrongful intention of injuring Plaintiff," the SAC does not sufficiently allege that ABP intentionally discriminated against DeZure when it denied her application to sit for the certification examination. ECF 37 at ¶¶ 91, 96. In fact, the SAC does not allege that ABP even *knew* DeZure was pregnant when it acted.

As alleged, the Court finds that the SAC fails to sufficiently allege DeZure's Unruh Act claims whether they are based on the ADA or not. Thus, these claims are dismissed with leave to amend.

IV.    CONCLUSION

For the foregoing reasons, the Court finds that the SAC: (1) fails to sufficiently allege disparate impact under the ADA, and (2) fails to sufficiently allege disparate impact and disparate treatment under the Unruh Act.  Accordingly, the Court GRANTS ABP's motion to dismiss the SAC and GRANTS DeZure leave to amend.  DeZure may amend her complaint to fix the deficiencies identified in this order.  DeZure may not add any new parties or claims without further leave of Court.  DeZure must file her third amended complaint or notify the Court that she does not wish to amend by November 22, 2021.  If DeZure does not act by November 22, the Court will dismiss the SAC, with prejudice.

**IT IS SO ORDERED.**

Dated:  November 1, 2021                    _____
                                            NATHANAEL M. COUSINS
                                            United States Magistrate Judge

United States District Court
Northern District of California